

FILED
IN OPEN COURT

DEC – 3 2010

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:10CR425 |
| ALEJANDRO ALQUINTA, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant ALEJANDRO ALQUINTA (ALQUINTA), agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

1.      ALQUINTA worked as a loan officer at SunTrust Mortgage, located in Falls Church, Virginia, in the Eastern District of Virginia, from 2003 until 2006.

2.      From in or about May 2005 through in or about March 2006, within the Eastern District of Virginia and elsewhere, ALQUINTA unlawfully and knowingly did combine, conspire, confederate and agree with others, including but not limited to a loan processor employed by SunTrust Mortgage, herinafter, J.C., to commit offenses against the United States, namely wire fraud.

3.      From in or about May 2005 through in or about March 2006, ALQUINTA acted as a loan officer for at least 14 fraudulent property transactions in the Eastern District of Virginia, in which unqualified buyers obtained over $4 million in mortgage loan proceeds.

4.      An "unqualified buyer" was an individual whose employment, monthly income, assets, citizenship or previous home purchases was falsified in loan documents to qualify the individual for larger home mortgage loans or better interest rates in an effort to purchase properties the individual could not otherwise have afforded.

5.      In order to get loans approved, ALQUINTA and others prepared or caused to be prepared false and fraudulent mortgage loan applications, including URLA forms, in the unqualified buyers' names. The unqualified buyers signed the false and fraudulent mortgage loan applications, which were then submitted to lending institutions. The fraudulent mortgage loan applications contained materially false, fraudulent and misleading information, including false information regarding applicants' employment, income, and assets.

6.      ALQUINTA and J.C. created or caused to be created false, fraudulent and misleading leases to offset borrowers' mortgage payments or provide income from other properties owned by the borrowers that were provided to lenders in support of the false, fraudulent and misleading URLAs.

7.      ALQUINTA and J.C. corroborated or caused to be corroborated the false asset and rental information included on the loan applications and URLAs by signing fake names to leases and recording false account balances on Verifications of Deposit (VOD).

8.      ALQUINTA and J.C. profited from these fraudulent transactions in numerous ways, including through real estate brokerage commissions, loan origination fees, and bonuses.

A)      Property Located at 3204 Beaumont Road, Woodbridge, Virginia

9.      In or around May 2005, ALQUINTA assisted in the completion of a URLA for
borrowers, E.V. and M.M. containing false information.

10.     ALQUINTA prepared or had prepared a falsified URLA and on or around May
16, 2005, presented or had it presented to E.V. and M.M. for their signature. The URLA
included materially false, fraudulent and misleading information, including that E.V. and M.M.
were earning $2,500 in monthly rental income on their primary residence. ALQUINTA was
aware that the aforementioned information was false.

11.     In support of the fraudulent loan application, ALQUINTA completed or caused to
be completed a fake lease showing that A.L. was leasing the property from E.V. under a two year
lease at a rate of $2,500 per month. The purported lessee on the lease was A.L., a person renting
a different property from another of ALQUINTA'S loan processors, Y.S.C.

12.     On or about May 16, 2005, using the fraudulent URLAs, E.V. and M.M.
purchased the property at 3204 Beaumont Road, Woodbridge, Virginia, for $334,900 using a
principal mortgage loan of $267,920 and a second mortgage loan of $50,235.

13.     In or around July, 2008 E.V. and M.M. filed for bankruptcy and defaulted on the
mortgages. The property was foreclosed, resulting in a loss of approximately $199,155.

14.     ALQUINTA created or caused to be created a number of similar false lease
documents for other properties to include:

                a.  7924 Bock Road, Fort Washington, Maryland; and

                b.  12600 Victoria Station Court, Fairifax, Virginia. The settlement for 12600

                    Victoria Station Court occurred after ALQUINTA resigned from SunTrust

Mortgage. ALQUINTA informed SunTrust Mortgage of the fraudulent lease in the loan file before he resigned.

B)    Property Located at 501 North Armistead Street Unit 210, Alexandria, Virginia

15.    In or around January 2006, with ALQUINTA's knowledge, J.C. assisted in the completion of a falsified URLA for a relative, V.H.

16.    J.C. prepared and presented V.H. with the completed URLAs on or about December 27, 2006, and asked V.H. to sign the documents. The URLAs that J.C. prepared included materially false, fraudulent and misleading information, including that V.H. earned a monthly income of $7,416 and that she had $34,700 in a Bank of America checking account. J.C. was aware that all of the aforementioned information was false.

17.    On or about January 11, 2006, using the fake name Nicole Adams, and purporting to be an employee of Bank of America, J.C. signed the VOD containing the false bank account balance and information for V.H.'s account with Bank of America.

18.    On or about January 27, 2006, using the fraudulent URLAs, V.H. purchased the property at 501 North Armistead Street #201, for $289,000, using a principal mortgage loan of $187,850 and a second mortgage loan of $101,150.

19.    On or about January 27, 2006, to fund this mortgage, two wires funding the first and second mortgages were sent from the SunTrust Mortgage bank account located at SunTrust Bank in Atlanta, Georgia into the Alliance Bank account of the settlement company located in Fairfax, Virginia.

20.    On or about July 1, 2007, V.H. defaulted on the mortgage. The property was foreclosed, resulting in a loss of approximately $157,000.

C)      Other Fraudulent Transactions

21.     The property located at 206 Shirley Square SE, Leesburg, Virginia was purchased by A.H. a relative of J.C. on or about March 23, 2006.  On or about March 23, 2006, to fund this mortgage, two wires funding the first and second mortgages were sent from the SunTrust Mortgage bank account located at SunTrust Bank in Atlanta, Georgia into the BB&T bank account of the settlement company located in Richmond, Virginia.  The loan file for this property contained a similar false VOD with an overstated bank balance and signed by J.C. in the fake name of Nicole Adams.  To support the URLA for the buyer, ALQUINTA created or was aware that J.C. created a false Verification of Rent (VOR) form that showed that A.H. was renting a property which in reality, A.H. owned.

22.     The government would prove at trial that the loss associated with 206 Shirley Square SE was at least $100,000.

23.     The property located at 12395 Quail Woods Drive, Germantown, Maryland was purchased by J.A.B., on or about January 20, 2006.  The loan file for this property contained a similar false VOD with an overstated bank balance and signed by J.C. in the fake name of Nicole Adams.  J.A.B. filed for bankruptcy and the property went into foreclosure.

24.     The government would prove at trial that the loss associated with 12395 Quail Woods Drive, was at least $86,000.

25.     J.C. and E.H. purchased a personal residence located at 2688 Centennial Court #47, Alexandria, Virginia prior to J.C.'s employment with SunTrust Mortgage.   The URLAs that ALQUINTA prepared or caused to be prepared included materially false, fraudulent and misleading information, including that E.H. earned a monthly income of $15,750 as a District Manager for Costco and that he and J.C. had $56,564 in a Bank of America checking account.

ALQUINTA was aware that all of the aforementioned information was false.  ALQUINTA, using a fake name, Votche Dermejian, and purporting to be an employee of Bank of America, signed the VOD containing the false bank account balance and information for J.C. and E.H.'s account with Bank of America.  This property was sold without a loss.

26.    ALQUINTA created or knew that J.C. created a number of similar false VODs for other properties to include:

   a.  6809 Beacon Place, Riverdale, Maryland;

   b.  8196 Tenbrook Drive, Gainesville, Virginia, a property which was refinanced with a American Home Mortgage Services before it was foreclosed resulting in a loss of over $270,000;

   c.  6290 Edsall Road #201, Alexandria, Virginia;

   d.  1125 Westfield Drive, Oxon Hill, Maryland;

   e.  5603 Haddon Drive, Lanham, Maryland;

   f.  9907 Hagel Circle, Lorton, Virginia, a property which is currently in default.  On or about August 10, 2005, to fund this mortgage, two wires funding the first and second mortgages were sent from the SunTrust Mortgage bank account located at SunTrust Bank in Atlanta, Georgia into the BB&T bank account of the settlement company located in Richmond, Virginia.

27.    The mortgage lenders suffered losses of approximately $486,305 as a direct result of ALQUINTA's conduct.

28.     The defendant's actions, as recounted herein, were in all respects intentional and deliberate, reflecting an intention to do something the law forbids, and were not in any way the product of any accident or mistake of law or fact.

29.     The foregoing Statement of Facts is a summary of the principal facts that constitute the legal elements of the offense of conspiracy to commit wire fraud.  This summary does not include all of the evidence that the government would present at trial or all of the relevant conduct that would be used to determine the defendant's sentence under the Sentencing Guidelines and Policy Statements.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:     Charles Connolly /usa

Charles F. Connolly
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:  703.299.3700
Fax:  703.299.3981
Email:  Charles.Connolly@usdoj.gov

Uzo Asonye
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3981
Email:  uzo.asonye@usdoj.gov

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ALEJANDRO ALQUINTA, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

ALEJANDRO ALQUINTA

I am the attorney for ALEJANDRO ALQUINTA. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Jonathan Simms, Esquire
Attorney for Alejandro ALQUINTA