IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:10-CR-425 |
| v. | ) | |
| | ) | The Honorable Liam O'Grady |
| ALEJANDRO ALQUINTA, | ) | |
| | ) | Sentencing Date: March 4, 2011 |
| Defendant. | ) | |
| | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride, United States

Attorney, and Uzo E. Asonye, Assistant United States Attorney, in accord with 18 U.S.C.

§ 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines" or

"U.S.S.G.") § 6A1.2 (Nov. 2008), files this Position of the United States With Respect to

Sentencing of defendant Alejandro Alquinta ("Alquinta" or "defendant").

The United States believes that the Probation Officer correctly calculated the Sentencing

Guidelines level to be 20 – after an aggravating role enhancement and an acceptance of

responsibility reduction – which results in a 33 - 41 months Guidelines Range.  This range is an

appropriate point from which to depart pursuant to the Government's accompanying motion for a

downward departure.  Based on the defendant's cooperation and the factors set forth in 18 U.S.C.

§ 3553(a), the United States requests that this Court impose a sentence of 17 months, which

represents a 50% reduction from the lower end of the Guidelines range as calculated by the Probation Officer.

***Argument***

As this Court is aware, following the Supreme Court's decision in *United States v. Booker*, the Sentencing Guidelines are now advisory.  543 U.S. 220, 261 (2005).  As such, "[i]n the wake of *Booker* . . . the discretion of the sentencing court is no longer bound by the range prescribed by the guidelines."  *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (quoting *Booker*, 542 U.S. at 264).  The Supreme Court recently clarified that this means that the sentencing court "may not presume that the Guidelines range is reasonable."  *Nelson v. United States*, --- US ----, 129 S.Ct. 890, 892 (2009).  Nevertheless, "the sentencing court must first calculate the Guidelines range."  *Id.* at 891; *see also Hughes*, 401 F.3d at 546 (holding that a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'").  Thus, "sentencing courts are not left with unguided and unbounded sentencing discretion."  *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006).

I.    **THE PROBATION OFFICER APPROPRIATELY CALCULATED THE GUIDELINES RANGE TO BE 33-41 MONTHS**

With respect to the Probation Officer's guideline calculations, the defendant contends that he was not a manager or supervisor of criminal activity that involved less than five participants.  The Probation Officer rightly rejected this argument and applied a two point enhancement under Subsection 3B1.1(b).  There is no question that the defendant managed or supervised the criminal conduct of his loan assistant, J.C.  *See* PSR at ¶41.

Prior to the defendant's cooperation with the Government, law enforcement learned a number of facts that confirms Alquinta's role as a manager and supervisor over J.C. First, as a loan officer Alquinta had supervisory authority and managerial control over J.C., his loan assistant. In 2005, Alquinta hired J.C. as a loan assistant. The defendant determined her compensation and he paid her salary. J.C. reported directly to Alquinta, who supervised all of J.C.'s work. In fact, Alquinta received compensation for every loan that J.C. processed. During the period that J.C. was employed at SunTrust, which was only six months, she worked for only one loan officer — Alejandro Alquinta.

Second, Alquinta taught J.C. how to falsify information in loan documents. He admitted so to law enforcement prior to his cooperation with the Government. Contrary to the defendant's contention that J.C. did not work at his direction, Alquinta told investigators that he showed J.C. how to falsify loan information in order to ensure that the borrower qualified for a loan. Alquinta also related to law enforcement conversations he had with J.C. in which he directed her to increase numbers if a borrower would not meet loan requirements. Indeed, Alquinta described J.C. as a "quick study" because she quickly learned how to alter borrower information even though at age 23 she had no experience in the mortgage loan business.

Moreover, J.C. corroborated Alquinta's own statements about their instructional relationship. According to J.C., she did not receive formal training in how to process mortgages; she simply followed Alquinta's instructions. J.C. reported that, at Alquinta's direction, she forged verifications of deposits, inflated income, and sent documents in between internal fax machines to make them look legitimate. She also told law enforcement that Alquinta reviewed loan packages with her and that she did not put false information into a loan file without

Alquinta's knowledge.  J.C. specifically recalled an instance where Alquinta directed her to falsify a signature but she declined until the defendant reviewed the file.  The defendant's own admissions and J.C.'s statements to law enforcement plainly support a manager or supervisor enhancement.

Application Note 4 to Subsection 3B1.1 indicates that in applying a manager or supervisor enhancement the Court should consider, among other factors, "the nature of the participation in the offense" and "the degree of control and authority exercised over others."  Here, the defendant directed much of his subordinate's fraudulent activity.  *Cf. U.S. v. Bonsu*, 2008 WL 3863358 at *7 (4th Cir. 2008) ("examples of control include instructing couriers, making travel arrangements or otherwise directing another person's activities").  Moreover, the defendant taught his subordinate the mechanics of the mortgage fraud scheme.  *U.S. v. McDaniel*, 398 F.3d 540, 552 (6th Cir. 2005) (upholding a manager or supervisor enhancement based on a District Court finding that defendant taught a co-conspirator the mechanics of the check fraud scheme).  These facts indicate that, as the Probation Officer determined, the manager or supervisor enhancement is appropriate in this case.

In addition, the Probation Officer recommended that the defendant receive a two-point reduction for her acceptance of responsibility.  The United States agrees with that recommendation and if the Court finds that the defendant qualifies for the two-point reduction, the United States will file a motion requesting an additional one-point reduction pursuant to U.S.S.G. §3E1.1(b) and the plea agreement.  These adjustments result in an adjusted offense level of 20 and a Guidelines Range of 33 – 41 months.  As set forth in the accompanying Motion

for Reduction of Sentence, based on the defendant's substantial assistance to the United States, the Government requests a 50% reduction from this Guidelines Range.

## II.    THE CALCULATED GUIDELINES' RANGE SERVES THE FACTORS SET FORTH IN SECTION 3553(a) AND ESTABLISHES AN APPROPRIATE STARTING POINT FOR DETERMINING THE DEFENDANT'S SENTENCE.

After calculating the appropriate guidelines range, "the court must 'determine whether a sentence within that range . . . serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006) (quoting *Green*, 436 F.3d at 455).  It is the Government's position that in this case the Sentencing Guidelines establish a reasonable, initial sentencing range that appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Section 3553(a) directs the sentencing court to consider various factors including the nature and circumstances of the offense and characteristics of the defendant.  In addition, Section 3553(a) states that the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(2)(A) & (B).

In general, a sentencing court must "articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range betters serves the relevant sentencing purposes set forth in § 3553(a)." *Green*, 436 F.3d at 456; *see also Hughes*, 401 F.3d at 546 ("If the court imposes a sentence outside the guidelines range, it should explain its reason for doing so.").

### A.      The Guidelines Range Is An Appropriate and Reasonable Starting Point in Light of the Nature of Defendant's Criminal Conduct

In formulating a sentence, this Court must take into account the nature and circumstances of the offense and the defendant's characteristics.  18 U.S.C. § 3553(a)(1).  Applying these sentencing factors to the facts of this case demonstrates that the Guidelines' range of 33-41 months incarceration is an appropriate and reasonable starting point from which to depart. Defendant Alquinta engaged in a serious and lengthy crime.  The defendant's conduct did not represent a momentary lapse of judgment or even a narrowly focused fraud.  His fraud was widespread, lasted multiple months, and affected numerous borrowers and communities.  He also supervised a subordinate, who helped him execute the scheme.  Moreover, the defendant did not exit this scheme willingly.  To the contrary, Alquinta ceased committing mortgage fraud when he was fired from SunTrust after the company's internal investigation uncovered his fraud.

The damage the defendant wrought is significant.  The defendant participated directly in fraudulent mortgage transactions resulting in mortgage loan proceeds to unqualified buyers of over $4 million and losses in excess of $600,000.  Multiple properties in the Northern Virginia area were foreclosed as a result of the defendant's actions.  All of those factors must be taken into account in fashioning an appropriate sentence.

Section 3553(a)(2)(A) also requires the sentence to "promote respect for the law."  The defendant, through his offense conduct, has shown a complete disrespect for the law.  As discussed above, the defendant — by submitting fraudulent loan documents and training another individual how to do so — played a critical role in carrying out the conspiracy's fraudulent purposes.  In short, the defendant took proactive and affirmative steps to help the conspiracy

succeed.  This serious conduct calls for a sentence that includes a significant period of incarceration.

The United States believes that starting with a sentence within the advisory Guideline range of 33-41 months would account for the seriousness of the defendant's crime.  In addition, starting with a sentence within the Guidelines range will help to avoid unwarranted disparities between similarly situated defendants.

**B.     A Starting Sentence Within The Guidelines' Range Would Provide An Appropriate And Reasonable Deterrent Factor.**

In addition, a starting sentence within the Guidelines' range is appropriate to provide the requisite deterrent factor.  *See* 18 U.S.C. § 3553(a)(2)(B).  The United States believes that the criminal conduct for which Alquinta is now being sentenced is deterrable and that a starting sentence within the Guidelines range is necessary and appropriate to afford adequate deterrence.

Mortgage fraud prosecutions require the Government to commit significant investigative and prosecutorial resources.  As a result of the significant resources required to mount a mortgage fraud prosecution, general deterrence becomes a more important sentencing factor. Moreover, the mortgage loan process relies heavily on the integrity of the loan officer.  In this case, the loan officer's complicity in the fraud was critical to the success of the underlying conspiracy.  And there is no question that the conspiracy did succeed; it resulted in fraudulent loans for more than 14 properties for unqualified buyers.  In addition to specific deterrence, it is important that any sentence given to the defendant serve as a deterrent to others who would work with a loan officer in an effort of further mortgage fraud.  The message must be that those who defraud banks and mortgage lenders for their own personal gain will be punished appropriately,

and that when they do that over an extended period of time and cause hundreds of thousands of dollars in loss, the punishment will be serious. A substantial period of incarceration is necessary to send the appropriate deterrent message.

### III.   OTHER SENTENCING ISSUES

For the reasons stated, the United States respectfully requests that this Court sentence the defendant to a sentence at the lower end of the applicable guidelines range. The Government further requests for the reasons set forth in its separate filing that this Court apply a 50 percent reduction under Guidelines § 5K1.1 to the sentence it would otherwise impose. The application of such a reduction to the lower end of the guidelines range would result in an overall sentence of 17 months. Such punishment would reflect the seriousness of the offense and the other factors present in this case, and would not be greater than necessary to satisfy the factors identified in 18 U.S.C. §3553(a)(2).

Finally, the Government respectfully requests that as part of its sentence the Court order restitution in the amount of $604,155 to be paid jointly and severally with other individuals involved in this conspiracy. The Government further requests that the Court order the defendant to make monthly restitution payments, in whatever amount the Court or the Probation Office deems appropriate, as a part of its sentence. In addition, the Government respectfully requests that the Court enter a forfeiture order in the amount of $486,305. The Government will submit proposed restitution and forfeiture orders at sentencing.

*Conclusion*

For the reasons stated above, the United States respectfully requests: (i) that this Court find that the Sentencing Guidelines offense level is appropriately calculated at level 20; (ii) that a sentence at the lower end of the guidelines range of 33-41 months be used as a the starting point because it reasonably accounts for each of the factors set forth in 18 U.S.C. § 3553(a); (iii) that this Court grant the defendant a 50% downward departure based on his substantial assistance to the Government; (iv) that this Court sentence the defendant to a total term of 17 months incarceration and enter a restitution order in the amount of $604,155 as well as a forfeiture order in the amount of $486,305.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:  _____/s/_____
Uzo E. Asonye
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax:    (703) 299-3980

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of February 2011, I filed electronically the foregoing

Position of the United States with Respect to Sentencing using the CM/ECF system, which will

send a notification of such filing (NEF) to the following:


Jonathan Simms, Esq.
David Dischley, Esq.
Bose Law Firm, PLLC
201 North Union Street
Suite 140
Alexandria, VA 22314
Phone: (703) 299-3440
Counsel for Defendant Alejandro Alquinta


                    /s/
Uzo E. Asonye
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax:    (703) 299-3980